IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DR. RICHARD E. MATLAND, | ) | |
| | ) | |
| Plaintiff, | ) | 12-cv-5165 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| LOYOLA UNIVERSITY CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Now comes Plaintiff, DR. RICHARD E. MATLAND (hereinafter, "Matland" or "Plaintiff"), by and through his attorney, Richard J. Gonzalez, of The Law Offices of Chicago-Kent College of Law, and for his Complaint against Defendant, Loyola University Chicago, (hereinafter, "Loyola" or "Defendant"), states as follows:

### Nature Of Action, Jurisdiction And Venue

1. This is an action for damages and equitable relief to redress the deprivation of rights secured to Plaintiff by virtue of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and state law claims of promissory estoppel and fraudulent misrepresentation.

2. Jurisdiction of this Court is invoked pursuant to the provisions of the ADA, and 28 U.S.C. § 1343

3. Venue is proper by virtue of 28 U.S.C. 1391 (b), in that Defendant employed Plaintiff in the Northern District of Illinois and all or a substantial part of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

4. Plaintiff met all administrative prerequisites to the maintenance of this suit in that

1

he timely filed a charge of unlawful disability discrimination with the Equal Employment Opportunity Commission on November 16, 2011. Plaintiff has obtained a Right-To-Sue Letter from the Equal Employment Opportunity Commission with respect to his ADA claim and brings this action within ninety days thereafter.

## Parties

5.  Plaintiff has been an employee of Defendant from 2006 through the present.

6.  Defendant is a not-for-profit corporation incorporated engaged in the business of providing college-level education, with its principal place of business located in Chicago, Illinois. Defendant is an employer and a proper party defendant within the definitions of the ADA, rendering it subject to suit thereunder.

## Facts

7.  From, 2004-2006, Plaintiff, a PhD in Political Science and a nationally renowned scholar within that field, was employed as a tenured Professor at the University of Houston in Houston, Texas and had been so for a period of sixteen years.

8.  In January, 2006, after having been actively recruited by Defendant, Plaintiff accepted Defendant's offer of the position of Professor with Defendant and offer to assume Defendant's prestigious "Rigali Chair."

9.  At the time of said offer, Plaintiff was gainfully employed at a university that enjoyed high national rankings in the field of Political Science. Plaintiff voluntarily resigned said position in order to accept Defendant's offer exclusively because of Defendant's offer of the "Rigali Chair."

10. Also at the time of said offer, Defendant, through its agent, orally assured Plaintiff that the "Rigali Chair" appointment was intended to be permanent in nature and that he would, after five years, undergo a simple "retention review" rather than a review of the nature typically undertaken in matters of promotion and tenure decisions.

11. Plaintiff at all relevant times satisfied and exceeded Defendant's legitimate performance expectations, as evidenced by, among other factors, Plaintiff's above average annual evaluations each year prior to his retention evaluation.

12. Plaintiff began experiencing health-related issues in 2007 and was diagnosed in May, 2007 with "interstitial lung disease." Plaintiff began extensive medical treatments directed at the condition which continued throughout subsequent years.

13. In May, 2008, Plaintiff underwent the requisite testing for a potential lung transplant. In addition, Plaintiff was diagnosed with depression and began medical treatment directed toward that medical condition as well. Plaintiff's initial treatment included dosages of 60-80 milligrams of prednisone per day.

14. In May, 2010, Plaintiff was advised by agents of Defendant that his review would occur in the fall of 2010. Plaintiff compiled and submitted the required and customary materials and submitted same in June, 2010.

15. The review process undertaken in 2010 was not, as Plaintiff had been assured at the time of acceptance of Defendant's offer of employment, a "retention review" but rather was the type of review normally applicable to matters of promotion and tenure. Four nationally recognized scholars at top universities (Northwestern, Ohio State, Penn State, and Rutgers) evaluated the same record and each wrote strong letters in enthusiastic support of reappointment. Despite having fulfilled all of the job requirements and having excelled in many areas included within the job description, the University's agents chose to ignore the record and in February 2011,

3

Defendant's Provost advised Plaintiff that he would not be retained with respect to Defendant's "Rigali Chair."

16. In the course of deciding to deny Plaintiff retention to the "Rigali Chair", Defendant's agent Dean Fennell issued a writing analogizing the demotion of Plaintiff to a hypothetical baseball team's decision to refuse to enter into a new contract with a baseball player who had sustained a "career-ending injury."

17. Plaintiff successfully appealed the adverse decision utilizing Defendant's normal and customary procedures for such an appeal. After an initial rejection of Plaintiff's appeal, the relevant University Committee voted unanimously to uphold Plaintiff's appeal in September, 2011 and recommended that the process be totally redone due to a number of factors including the failure to adequately take into account the effect of Plaintiff's health and medical condition during the period under review.

18. Despite the decision of the relevant Committee to uphold Plaintiff's appeal, on October 3, 2011, Defendant's President, Michael J. Garanzini, rejected and overturned said decision and advised Plaintiff that he was no longer to be retained in the position of "Rigali Chair." In the writing announcing said decision, Garanzini made numerous references to Plaintiff's medical conditions and treatment and expressed the view that Defendant did not need to provide any accommodations for Plaintiff's disabilities.

19. Plaintiff at all relevant times successfully performed the essential functions of his position.

## COUNT I:

## Violation of ADA: Failure To Reasonably Accommodate

20. Plaintiff repeats and re-alleges paragraphs 1-19 and incorporates same by reference as though fully set out herein.

21. Plaintiff's medical conditions of interstitial lung disease and depression constitute disabilities within the definition of the ADA.

22. The ADA requires covered entities to provide "reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose undue hardship." 42 U.S.C. § 1211(b)(5)(A).

23. Plaintiff performed the essential functions of his employment position between January, 2006 and the present without reasonable accommodation.

24. To the extent that Defendant's agents believed that Plaintiff suffered from a "career-ending injury" or other disability that would have necessitated an accommodation within the meaning of the ADA, it had a duty to engage in an interactive process with Plaintiff in order to arrive at a reasonable accommodation that Defendant believed would meet its objectives.

25. Defendant's actions interfered with Plaintiff's rights under the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*, including, but not limited to, failing to provide reasonable accommodations for Plaintiff's disability.

26. In violating 42 U.S.C. § 12101 *et seq.,* Defendant acted with malice and/or reckless indifference to the federally protected rights of Plaintiff under the ADA.

27. Plaintiff has suffered severe damages as a direct and proximate result of

Defendant's unlawful conduct as described herein, including, but not limited to loss of a prestigious position, emotional distress, psychological pain and suffering, and other damages.

WHEREFORE, Plaintiff requests that this Court:

A. Enter judgment finding that Defendant unlawfully failed to accommodate Plaintiff's disability;

B. Reinstate Plaintiff to his previous position as holding Defendant's "Rigali Chair" within its Department of Political Science;

C. Award Plaintiff compensatory and punitive damages at the maximum allowable under the ADA;

D. Award Plaintiff reasonable attorney fees and costs; and

E. Such other relief as this Court deems just and proper.

## COUNT II

## Unlawful Demotion Based On Disability And/Or History Of Or Perception Of Disability In Violation Of The ADA

28. Plaintiff repeats and re-alleges paragraphs 1-27, and incorporates the same by reference herein.

29. Plaintiff was, at all times relevant hereto, a qualified individual with a disability within the meaning of the ADA.

30. The Defendant was on notice of the Plaintiff's disability and was aware that Plaintiff had a history of disability and further regarded Plaintiff as having a disability within the meaning of the ADA.

6

31. The ADA provides that it is unlawful to take adverse action against a qualified individual with a disability because of his disability and/or history of disability, or because of an employer's perception that an employee suffers from a disability.

32. In demoting Plaintiff because of his disability, his history of disability, and because it regarded Plaintiff as suffering from a history of disability, Defendant treated Plaintiff differently and less favorably than it treated similarly-situated persons not disabled within the meaning of the ADA.

32. At all relevant times, Defendant was under a duty to conduct and implement its personnel decisions in a non-discriminatory manner without regard to disability, history of a disability, or Defendant's perception that Plaintiff suffered from a disability.

33. Defendant's decision to demote Plaintiff constitutes unlawful disability discrimination in violation of 42 U.S.C. § 12101 *et seq*.

34. In violating 42 U.S.C. § 12101 *et seq*., Defendant acted with malice and/or reckless indifference to the federally protected rights of Plaintiff under the ADA.

35. Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to loss of a prestigious position, emotional distress, psychological pain and suffering, and other damages.

36. There is a causal connection between the protected activity and the adverse actions in that Plaintiff had never received an unsatisfactory performance appraisal nor at any time been accused of improper conduct. and the adverse action took place in close proximity to the protected activity.

37. In violating 42 U.S.C. § 12101 *et seq*., Defendant acted with malice and/or reckless indifference to the federally protected rights of Plaintiff.

WHEREFORE, Plaintiff prays for relief in the form of an Order:

A.  Awarding him an amount equal to his lost wages, incidental expenses, and value of his lost benefits;

B.  Reinstating Plaintiff to his former position, or, in the alternative, awarding him future pecuniary losses caused by his termination;

C.  Awarding him compensatory and punitive damages at the maximum limit allowable by the ADA;

D.  Awarding him attorney's fees and all costs and expenses associated with this litigation; and

E.  Such other relief as this Court deems just and appropriate.

## COUNT III

### Promissory Estoppel

38.  Plaintiff repeats and re-alleges paragraphs 1 – 37 and incorporates same by reference as though fully set out herein.

39.  Defendant's promises that the position offered to Plaintiff was to be permanent in nature and would entail merely a "retention review" process constituted an offer within the meaning of contract law.

40.  Plaintiff accepted the offer, thereby creating a binding contract between the parties.

41.  In consideration for Defendant's offer, Plaintiff resigned his then-current full-time gainful employment.

42. In accepting the offered position and in resigning his then-current position in order to accept the promised position, Plaintiff detrimentally relied upon Defendant's promises and Defendant is estopped by promissory estoppel from refusing to honor its promises to Plaintiff.

43. By refusing to honor its promises, Defendant breached its contract with Plaintiff, causing Plaintiff damages, including loss of a prestigious position.

WHEREFORE, Plaintiff prays for an Order:

A. Awarding Plaintiff reinstatement to the position of "Rigali Chair" within Defendant's Department of Political Science; and

B. Such other relief as this Court deems just and appropriate.

## COUNT IV

### Fraudulent Misrepresentation

44. Plaintiff repeats and re-alleges paragraphs 1 – 43 and incorporates same by reference as though fully set out herein.

45. In offering Plaintiff the position of holder of the "Rigali Chair" and in making the additional promises set out above, Defendant, through its agents, made statements of a material nature which statements were untrue.

46. In making said statements, Defendants through , its agents, knew said statements to be untrue and/or made statements in culpable ignorance of their truth or falsity.

47. Defendant's statements were made for the purpose of inducing reliance upon the statements by Plaintiff.

48. Said statements were, in fact, relied upon by Plaintiff to his detriment, in that Plaintiff resigned gainful employment and accepted a position with Defendant under its fraudulent pretenses.

49. Plaintiff was injured by his reliance upon Defendant's statements in that he suffered loss of salary, the value of promised benefits, and incidental and out-of-pocket expenses.

50. The foregoing conduct constitutes the tort of fraudulent misrepresentation.

51. In committing said tort, Defendant acted willfully and with malice.

WHEREFORE, Plaintiff prays for an Order:

A. Reinstating Plaintiff to his previous position;

B. Awarding Plaintiff compensatory and punitive damages in an appropriate amount; and

C. Such other relief as this Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

By: _____s/Richard J. Gonzalez_____
      Attorney for Plaintiff

RICHARD J. GONZALEZ
Law Offices of Chicago-Kent College Of Law
565 West Adams Street, Suite 600
Chicago, Illinois  60661
Tel.: (312) 906-5079
Fax: (312) 906-5299